# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JORI GLASPER and KRYSTAL WYCKOFF, | ) ) ) |
| Plaintiffs, | ) Case No. 18-cv-6063 |
| v. | ) ) Hon. Steven C. Seeger |
| ST. JAMES WELLNESS REHAB & VILLAS, LLC, | ) ) ) |
| Defendant/Third-Party Plaintiff, | ) ) ) |
| v. | ) ) |
| TRILOGY REHAB SERVICES, LLC, | ) ) |
| Third-Party Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Relators Jori Glasper and Krystal Wyckoff sued St. James Wellness Rehab & Villas – a nursing and care facility – under the False Claims Act. They allege that the company submitted false claims to the government for unnecessary and inflated therapy services.

St. James, in turn, filed a third-party complaint against Trilogy Rehab Services, a contractor that provided therapy services at St. James's facility. St. James alleges that Trilogy should be on the hook if it is found liable for any False Claims Act violations.

The decision to bring Trilogy into this case added a procedural wrinkle. The contract between St. James and Trilogy included a forum-selection clause that requires the parties to litigate any disputes in Kentucky. Basically, St. James (the defendant) brought Trilogy into this case in Illinois, and Trilogy wants to transfer that half of the case to Kentucky.

Trilogy moves to transfer the third-party complaint to the Western District of Kentucky under 28 U.S.C. § 1404(a). For the reasons stated below, the motion is granted.

## Background

Plaintiffs/Relators Jori Glasper and Krystal Wyckoff filed suit under the False Claims Act, alleging that Defendant St. James Wellness Rehab & Villas made and filed false claims under Medicare. *See* Am. Cplt. (Dckt. No. 36).

In short, the Relators allege that St. James – a nursing and intermediate care facility – submitted claims to the government for unnecessary and inflated services. As Glasper and Wyckoff tell it, St. James pressured its facility administrators and therapists to improperly classify certain Medicare patients for treatment and to extend patients' stays without regard to the patients' actual needs. *Id.* at ¶¶ 49–51. St. James allegedly did so to bill Medicare for reimbursement at a higher rate than it was entitled to receive. *Id.*

In response, St. James filed a motion to dismiss the complaint. *See* Def.'s Mtn. to Dismiss (Dckt. No. 47). It also filed a third-party complaint against Trilogy Rehab Services, bringing claims of breach of contract and indemnification. *See* Third-Party Cplt., at ¶¶ 22–36 (Dckt. No. 59).

St. James alleges that it contracted with Trilogy to have Trilogy assess the needs of the residents and provide therapy services. *See* Resp. to Mtn. to Transfer, at 2–3 (Dckt. No. 68). St. James claims that, if it is eventually found liable for submitting false claims to the government, Trilogy is the real culprit and should pay the judgment. *See* Third-Party Cplt., at ¶¶ 20–21 (Dckt. No. 59).

Trilogy, in turn, moved to transfer St. James's third-party complaint. *See* Mtn. to Transfer (Dckt. No. 65). Trilogy contends that the third-party complaint belongs in the Western District of Kentucky instead of the Northern District of Illinois. *Id.* at ¶ 2.

Trilogy points to a mandatory forum-selection clause in its contract with St. James. That provision requires any disputes related to or arising under the contract to be adjudicated in Kentucky. *Id.* Specifically, the forum-selection clause says:

> Any and all disputes arising under or related to the Agreement shall be subject exclusively to the jurisdiction of the appropriate state or federal court in the Commonwealth of Kentucky, County of Jefferson, except that [Trilogy Rehab d/b/a/] Paragon may initiate any action with respect to sums of money due and owing under this Agreement in any court possessing jurisdiction over such claims.

*See* Agreement (Dckt. No. 68-1, at 9 of 17).

Trilogy now asks the Court to enforce the forum-selection provision and transfer the third-party complaint to the Western District of Kentucky under 28 U.S.C. § 1404(a). *See* Mtn. to Transfer (Dckt. No. 65).

**Legal Standard**

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *See* 28 U.S.C. § 1404(a). A motion under section 1404(a) asks one federal district court to transfer the case to another federal district court.

The statute speaks of an "action," which typically means the entire case, not a hunk of it. *See Brownback v. King*, 141 S. Ct. 740, 751 (2021) (Sotomayor, J., concurring) ("An 'action' refers to the whole of the lawsuit."); *Taylor v. Brown*, 787 F.3d 851, 857 (7th Cir. 2015). But

district courts have the power to sever parts of a case. In effect, a district court could slice a case in two, and then transfer half of the case elsewhere and keep the rest.[1]

Typically, a court considering a motion to transfer under section 1404(a) "must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 62 (2013). In determining whether a transfer would be "in the interest of justice," a court can consider several factors, including docket congestion, each court's relative familiarity with relevant law, and the relationship of each community to the controversy, among other potential factors. *See Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). "When considering whether to transfer a case, a court must engage in a flexible and individualized analysis and look beyond a narrow or rigid set of considerations" in making its determination. *In re Ryze Claims Sols., LLC*, 968 F.3d 701, 708 (7th Cir. 2020).

But the analysis changes when the parties have agreed to a valid forum-selection clause. When the parties have agreed to litigate elsewhere, the question for a court is not whether that agreement makes sense. And the question is not whether the parties picked the best forum. The

---

[1] St. James asserts that before transferring the case, the Court must conduct a separate analysis to determine whether severing the case from the underlying action is proper. Not so. A court has "broad discretion" to decide whether to sever a case "in the interest of judicial economy and to avoid prejudice," and the analysis is similar to the analysis under section 1404(a). *See Johnson v. Korte*, 2017 WL 3720172, at *2 (N.D. Ill. 2017) (citations omitted). Indeed, courts regularly conclude that severance is appropriate where the section 1404(a) analysis tips in favor of transfer. *See LG Elecs., Inc. v. P'ships & Unincorporated Assocs. Identified in Schedule A*, 2021 WL 5564864, at *3 (N.D. Ill. 2021) ("For these reasons, this Court concludes that venue is improper in this district as to Defendants W&L and Top Pure. Accordingly, this Court will sever the claims against these Defendants and transfer them to a proper venue."); *United States ex rel. D.D.S. Indus., Inc. v. Nauset Constr.*, 2018 WL 5303036, at *4 (D. Mass. 2018) ("This District Court finds that where, as here, a motion to transfer under § 1404(a) is warranted, there is no need for a separate severance analysis."); *Valspar Corp. v. E.I. DuPont de Nemours & Co.*, 15 F. Supp. 3d 928, 932 (D. Minn. 2014) ("If the Court were to conclude the pertinent factors render transfer appropriate under § 1404(a), then severance, too, would be proper."); *Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400, 431 (E.D.N.Y. 2014) ("In exercising [the discretion to sever a case], courts typically consider the same general factors elucidating the § 1404(a) analysis.").

question is whether the public interest provides a strong reason why the parties shouldn't be where they agreed to be.

A forum-selection clause changes the rules of the game. For starters, typical deference to a plaintiff's choice of forum goes out the window. "[T]he plaintiff's choice of forum merits no weight." *Atl. Marine*, 571 U.S. at 63. Basically, a plaintiff already picked its forum in the forum-selection clause, and doesn't get a second pick. A plaintiff gets no deference when reneging on an agreement about where to litigate.

Rather, "the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed." *Id.* at 64. Additionally, "a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interest." *Id.* Instead, "a district court may consider arguments about public-interest factors only." *Id.* Finally, when a party files suit in a forum different from that contained in a valid forum-selection clause, "a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules." *Id.*

All in all, the typical factors in a section 1404(a) analysis will "rarely" outweigh a forum-selection clause. *Id.* at 64. "When th[e] analysis is properly applied, it 'requires that a forum-selection clause be given controlling weight in all but the most exceptional cases.'" *In re Ryze*, 968 F.3d at 708 (quoting *Atl. Marine*, 571 U.S. at 59–60).

## Analysis

At the outset, the parties agree that St. James and Trilogy signed a binding Therapy Services Agreement in April 2014. Trilogy repeatedly mentions the agreement in its motion to transfer. *See* Mtn. to Transfer, at ¶¶ 1–2, 5 (Dckt. No. 65). And St. James, for its part, attaches

the relevant agreement to its response to the motion to transfer. *See* Agreement (Dckt. No. 68-1). No party argues that the agreement does not exist, or that the forum-selection clause is invalid.

And no party argues that the clause is permissive, rather than mandatory, either. A forum-selection clause is mandatory when the "language is obligatory" and "clearly manifests an intent to make venue compulsory and exclusive." *See Paper Express Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 756 (7th Cir. 1992).

Here, the forum-selection clause is mandatory. The parties agreed on what they "shall" do. "Any and all disputes arising under or related to the Agreement *shall* be subject *exclusively* to the jurisdiction of the appropriate state or federal court in the Commonwealth of Kentucky, County of Jefferson." *See* Agreement (Dckt. No. 68-1, at 9 of 17) (emphasis added). The clause is about where a dispute *must* go, not where it *can* go.

St. James does make one passing argument about the scope of the provision. St. James argues that the forum-selection clause allows a party to file suit "in any court – anywhere that possessed jurisdiction as it relates to any money due and owing under the contract, regardless of which party owed the funds." *See* Resp. to Mtn. to Transfer, at 8 (Dckt. No. 68). Basically, St. James seems to think that a dispute about money can go anywhere.

That argument – unlike their dispute – goes nowhere. St. James misreads the plain language of the relevant provision. According to the contract, the parties must litigate any disputes in Kentucky, with one exception. Kentucky courts must hear all disputes, "except that [Trilogy d/b/a] Paragon may initiate any action with respect to sums of money due and owing under this Agreement in any court possessing jurisdiction over such claims." *See* Agreement (Dckt. No. 68-1, at 9 of 17).

In other words, Trilogy – not St. James – has the right to file suit against St. James in any court having jurisdiction if the claim involves money owed under the contract. It's a one-way ticket out of Kentucky, for one and only one passenger: Trilogy.

The provision does not entitle St. James to file suit outside Kentucky. And it doesn't say that any dispute about money can be heard anywhere. It says that Trilogy can leave its home turf of Kentucky and litigate elsewhere if it wants to, and if its claims involve money owed under the contract. It doesn't mean that *St. James* can file suit in any court against Trilogy for a claim *not* related to money owed under the contract.

St. James also argues that Trilogy lacks standing to invoke the forum-selection provision because it is a third-party defendant. *See* Resp. to Mtn. to Transfer, at 4 (Dckt. No. 68). According to St. James, "[t]hird party defendants may not object to venue because third-party claims need not independently satisfy venue requirements. Instead, third party claims are considered closely related to the underlying action and satisfy the requirements for supplemental jurisdiction under 28 USC sec 1367." *Id.*

St. James mixes up jurisdiction and venue. "Venue and jurisdiction are different in that '[j]urisdiction is the power to adjudicate, while venue, which relates to the place where judicial authority may be exercised, is intended for the convenience of the litigants.'" *Johnson v. Johnson*, 644 B.R. 246, 252 (N.D. Ga. 2022) (quoting *Still v. Rossville Crushed Stone Co.*, 370 F.2d 324, 325 (6th Cir. 1966)). Jurisdiction is about what a court can do; venue is about where a case belongs.

A court may have supplemental *jurisdiction* over a third-party complaint, but still conclude that *venue* is proper elsewhere. A power to hear part of a case does not mean that it belongs here.

Transferring a case based on a forum-selection clause is a bread-and-butter part of federal litigation. But this case comes with an added wrinkle. The forum-selection clause is not between the plaintiff and the defendant. The forum-selection clause is between the defendant/third-party plaintiff and the third-party defendant. Basically, the case involves two conjoined trains, with one in Chicago and the other that wants to chug to Kentucky.

If the cases had to stay together, it would be a trainwreck. The interests of the parties are not aligned. In fact, they are mutually exclusive. They pull in different directions.

Glasper and Wyckoff (the plaintiffs) have an interest in their chosen forum. St. James (the defendant, and third-party plaintiff) has an interest in avoiding litigating two cases in two forums, which increases costs and creates a risk of inconsistent rulings. Trilogy (the third-party defendant) has an interest in enforcing the forum-selection clause.

Not every party can get what it wants.

Keeping the entire case in Illinois would preserve plaintiffs' chosen forum, and would promote efficiency by avoiding multiple lawsuits. But it would sacrifice the forum-selection clause between St. James and Trilogy.

Keeping the dispute between plaintiffs and St. James in Illinois – and severing and sending the dispute between St. James and Trilogy to Kentucky – would preserve plaintiffs' chosen forum, and it would uphold the forum-selection clause. But it would force St. James to litigate two overlapping cases in two states. From an efficiency standpoint, litigating two cases in two states would impose significant burdens on the parties, and on the judicial system itself.

Sending the entire case to Kentucky would make more sense from an efficiency standpoint, and it would uphold the forum-selection clause. But it would force plaintiffs to surrender Illinois as their chosen forum.

One might wonder which interest – preserving plaintiffs' choice of forum, promoting efficiency, and enforcing a forum-selection clause – gets priority. At first blush, it might not be obvious which interest is the king of the mountain on the hierarchy of values.

The Supreme Court sent strong signals about the relative weight of the values in *Atlantic Marine*. There, the Supreme Court confirmed that a motion for improper venue is the wrong way to enforce a forum-selection clause. Instead, the right path is a motion to transfer under 28 U.S.C. § 1404(a) (when the case can stay within the federal court system, that is, by going from one district court to another).

Along the way, the Supreme Court dropped enough breadcrumbs to fill a bread basket about the importance of enforcing a forum-selection clause. "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine*, 571 U.S. at 62.

The Supreme Court then upped the ante. A forum-selection clause must receive "controlling weight in all but the most exceptional cases." *Id.* at 60. "Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id.* at 62. "Exceptional" and "extraordinary" set a high bar.

But when parties agree to a forum-selection clause, the private interests of the parties themselves no longer carry the day. "[A] district court may consider arguments about public-interest factors only." *Atl. Marine*, 571 U.S. at 64. And those public factors will "rarely defeat a transfer motion." *Id.* Such cases "will not be common." *Id.*

A party's interest in efficiency fades into the background when a forum-selection clause enters the scene. "When parties agree to a forum-selection clause, they waive the right to

challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.*

In effect, the parties decided the best allocation of resources *ex ante*. "[W]hatever 'inconvenience' [the parties] would suffer by being forced to litigate in the contractual forum as [they] agreed to do was clearly foreseeable at the time of contracting." *Id.* (brackets in original) (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17–18 (1972)).

*Atlantic Marine* torpedoes any efficiency-based objections that St. James may have to transferring their dispute to Kentucky. Most of St. James's arguments have to do with private interests in keeping the case in the Northern District of Illinois. For example, it argues that the parties have largely conducted business in Illinois, that the witnesses and evidence relating to the third-party claims are in Illinois, and that the federal court in Kentucky would be unable to subpoena Illinois witnesses. *See* Resp. to Mtn. to Transfer, at 6–8 (Dckt. No. 68).

Maybe it would be inefficient and costly for St. James to litigate in two states. And maybe litigating here would be more convenient for the witnesses and the parties. But those interests are private interests, and courts "should not consider arguments about the parties' private interests" when faced with a motion to transfer based on a forum-selection clause. *See Atl. Marine*, 571 U.S. at 64.

True, the dispute between St. James and Trilogy is related to the dispute between plaintiffs and St. James. But the agreement in question includes no carve-out for a dispute that is related to a dispute in another state. Quite the opposite. St. James agreed to litigate "[a]ny and all disputes arising under or related to the Agreement" in Kentucky. *See* Agreement (Dckt. No. 68-1, at 9 of 17). "Any and all" means *any* and *all*.

It was foreseeable that a dispute between St. James and Trilogy could relate to a dispute between St. James and someone else. The parties could have bargained for a carve-out if their dispute is linked to some other lawsuit. But instead, the parties agreed to the certainty and predictability of litigating in Kentucky. This Court will not undo the deal because St. James now thinks that it's a raw deal.

Again, the procedural posture is a little different than most cases that deal with a forum-selection clause. The forum-selection clause is between the defendant/third-party plaintiff and the third-party defendant, not the plaintiff and the defendant. St. James (defendant/third-party plaintiff) linked the two disputes, and Trilogy wants to decouple their dispute from the case between plaintiffs and St. James.

At the end of the day, it does not matter that a third-party defendant, instead of a defendant, is invoking the forum-selection clause. If St. James couldn't sue Trilogy in Illinois as a *plaintiff*, then it is hard to see how St. James could sue Trilogy in Illinois as a *third-party plaintiff*. A claim is a claim.

If concerns about efficiency don't carry the day (and they don't), then it should not matter whether St. James is a plaintiff or a third-party plaintiff. Either way, the agreement applies because it covers any "dispute[]." *Id.*

Other district courts have recognized that third-party defendants may enforce forum-selection clauses against third-party plaintiffs. *See, e.g.*, *Pinkus v. Sirius XM Radio Inc.*, 255 F. Supp. 3d 747, 751 (N.D. Ill. 2017) (Feinerman, J.); *Robrinzine v. Big Lots Stores, Inc.*, 2016 WL 3459733, at *5 (N.D. Ill. 2016) (St. Eve, J.); *Cabada v. Sw. Airlines*, 2015 WL 1931312, at *1 (N.D. Ill. 2015) (Guzmán, J.); *Krauss-Maffei Corp. v. ABC Tech., Inc.*, 2022 WL 893097, at *4 (E.D. Ky. 2022); *Grisham v. Guarantee Tr. Life Ins. Co.*, 2018 WL 1725801, at *5 (E.D. Mo.

2018); *United States ex rel. D.D.S. Indus., Inc. v. Nauset Constr. Corp.*, 2018 WL 5303036, at *4 (D. Mass. 2018); *Glob. Quality Foods, Inc. v. Van Hoekelen Greenhouses, Inc.*, 2016 WL 4259126, at *5 (N.D. Cal. 2016).

So the forum-selection clause is valid, and Trilogy may invoke the clause in a motion to transfer. But that's not the end of things. The Court must still determine whether the public interest factors should override the forum-selection provision. *See Atl. Marine*, 571 U.S. at 64.

That is, the Court must consider factors like "the unfairness of burdening citizens in an unrelated forum with jury duty." *Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 868 (7th Cir. 2015). Other considerations include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine*, 571 U.S. at 62 n.6 (citation omitted).

Overall, the weight of the public interest factors tip in favor of enforcing the forum-selection clause.

The local interest factor weighs slightly in favor of keeping the third-party complaint in the Northern District of Illinois. The controversy stems from alleged events that took place in Illinois. So, Illinois and its residents may have an interest in deciding the fate of an Illinois-based company that allegedly defrauded the federal government in treating Illinois patients.

The court congestion factor is neutral. No party argues that one district or the other would be more efficient in resolving the third-party claims. And no one argues that one district or the other would be overburdened by taking on the third-party claims. (The simple truth is that both districts are probably overloaded anyway.) So that factor doesn't tip the scale either way.

The other factors weigh in favor of transfer. Most of the underlying events relating to the third-party claims took place in Illinois, but that fact does not mean that Kentucky is an entirely "unrelated forum." St. James and Trilogy preselected Kentucky law as the governing law for their claims. All else being equal, a Kentucky courtroom is a better place to apply Kentucky law than an Illinois courtroom. *See IAC/InterActiveCorp v. Roston*, 44 F.4th 635, 645 (7th Cir. 2022) (finding transfer appropriate where California law governed, "so Illinois citizens would be burdened in having to learn that relevant law"); *see also Pinkus*, 255 F. Supp. 3d at 752 ("Because New York law applies, the public interest favors a New York forum.").

Additionally, Trilogy has its principal place of business in Kentucky, too. *See* Third-Party Cplt., at ¶ 2 (Dckt. No. 59). So Kentucky has an interest in providing a forum for a local company accused of misconduct.

On balance, the public interest factors support transfer to Kentucky. At the very least, there is no good reason to change the deal and keep this case here. This case is not one of those "unusual cases" in which the public interest factors "defeat a transfer motion." *Atl. Marine*, 571 U.S. at 64; *see also Barnett v. DynCorp Int'l, LLC*, 931 F.3d 296, 309 (5th Cir. 2016) ("[The public interest] factors justify a refusal to enforce a forum-selection clause only in truly exceptional cases.") (quotation marks omitted). The parties preselected a forum to adjudicate their claims, and the Court will hold them to it.

One final point. At this juncture, the Court is simply severing the case and sending the dispute between St. James and Trilogy to Kentucky. For now, the dispute between plaintiffs and St. James will remain in Illinois, meaning plaintiffs' chosen forum. In essence, the Court is simply decoupling the two trains, and allowing one of them to go to Kentucky. Maybe the other train will follow. But that's an issue for another day.

**Conclusion**

For the reasons stated above, Trilogy's motion to transfer the third-party complaint is granted. The third-party complaint is hereby severed and transferred to the Western District of Kentucky under 28 U.S.C. § 1404(a).

Date: June 7, 2023

                                                                          _____
                                                                          Steven C. Seeger
                                                                          United States District Judge